IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 4:14cr178 |
| | § | |
| ISAAC IVAN HARTFIELD | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

On April 29, 2015, the Court held a hearing on Defendant's Motion to Suppress Evidence and Statement (Dkt. 20), the matter having been referred to the undersigned by the Honorable Marcia A. Crone (*see* Dkt. 23). Having considered the evidence presented, the Court recommends that the motion be DENIED.

Defendant is charged in this matter with a violation of 18 U.S.C. §922(g)(1), felon in possession of a firearm. In his motion, Defendant asks that the Court suppress any and all evidence and statements obtained in conjunction his June 6, 2014 arrest. Defendant argues that the search of his person was without a warrant, without reasonable suspicion and without probable cause in violation of his Fourth Amendment rights and that any statements obtained thereafter by officers were obtained in violation of the Fifth Amendment. The Government has filed a response in opposition.

### EVIDENCE PRESENTED

At the hearing, Plano Police Officer Matthew Eadler and Defendant testified. The Court also admitted an audiotape of the 911 call reporting Defendant's suspicious activity and a video recording of the questioning of Defendant while in Eadler's patrol car.

1

## FACTUAL BACKGROUND

This case involves a 911 call made by an anonymous caller reporting two individuals sitting inside a car at an apartment complex in Plano, Texas. The caller reported that she believed that the individuals were using drugs and may have engaged in a drug deal. The Plano Police Department responded to the 911 call, and Defendant was the passenger in the vehicle. Defendant was removed from the vehicle and patted down. Officers found cocaine in his pocket and a gun in the glove compartment of the car. After Defendant was read his rights, Defendant stated that the gun was his. Defendant argues that the pat down was not justified, that it was not immediately apparent that the substance in his pocket was cocaine, and that his statements were taken in violation of his Fifth Amendment rights.

## TESTIMONY AND EVIDENCE PRESENTED

At the hearing, the Government called Officer Matthew Eadler, a police officer with the City of Plano Police Department. Eadler testified that he received a report through 911 dispatch that two individuals were seen snorting a substance in a vehicle and that a drug deal appeared to have taken place at a Plano apartment complex. The suspected car was described as a black Nissan Altima occupied by a black male and a black female. According to Eadler, the caller provided a specific description of the area of the apartment complex where the vehicle was parked.[1]

---

[1]According to the testimony presented, this was the second time officers were dispatched to this apartment complex that evening. The first call involved a complaint regarding an individual leaving dog feces on a stairway of an apartment. Although Defendant was one of the individuals present when officers responded to that call and testified that he interacted with Officer Eadler at that time, Officer Eadler testified at the hearing that he did not recall speaking with Defendant when responding to the first 911 call. Because the two calls appear unrelated and the first call is not at issue in this case, the Court need not address the discrepancies in the

During Eadler's testimony, the Government introduced into evidence a recording of the 911 call reporting the suspicious activity in the parking lot. The female caller described the vehicle, stated where it was in the parking lot of the complex, and provided a description of its occupants. The caller also stated that the occupants of the vehicle kept putting their heads down and appeared to be snorting something. The caller also reported that she observed another man go to the car window, take out his wallet and then leave.

Officer Eadler testified that when he arrived at the complex and identified the suspect vehicle, he observed the male passenger (identified as Defendant here) stuffing something down into the center console. According to Eadler, he asked Defendant to step out of the vehicle almost immediately upon approach. Eadler could not remember if the passenger window was open. Eadler testified that he did not smell an odor of drugs and that, although Defendant appeared nervous, he did not appear intoxicated.

According to Eadler, a packet labeled "K2" fell out of the vehicle as Defendant stepped out. Eadler testified that, in June 2014, it was a violation of a Plano city ordinance to possess K2. Eadler testified that he did not pick up the K2 packet and that he believed it to be empty.

Eadler testified that after Defendant exited the car and as he spoke with Defendant, Defendant continued to place his hands in his pocket. According to Eadler, based on this suspicious movement, he grabbed Defendant's hand and patted Defendant down. According to Eadler, he could feel the crinkle of plastic baggie and hard round substance through Defendant's cargo pants during the pat down. Eadler testified that he did not manipulate the object in any way. Eadler testified that,

---

testimony presented.

3

based on his experience and the report of drug use by the 911 caller, he believed it was cocaine. Eadler then removed a sock from the pocket and found cocaine inside a plastic baggie in the sock. During the hearing, Eadler could not remember if the sock was tied in a knot but his report of the arrest indicated that it was.

Eadler testified that, after he found the cocaine, he placed Defendant in his squad car and searched the Altima. According to Eadler, the baggie of K2 that fell from the car gave him probable cause to search it. Eadler searched between the seat and center console where he had previously observed Defendant shove something. Eadler testified that he found an exacto knife but that the knife was not seized because it was not illegal. Officer Eadler also found a pistol in the glove box of the car. According to Eadler, officers questioned the female driver who said it was her vehicle but it that it was not her firearm it.[2]

Eadler testified that, after Defendant was placed in handcuffs and put in the back of his patrol car, he was read his *Miranda* rights. Eadler testified that Defendant waived his *Miranda* rights and told him that the gun was his, that he got it from someone in Dallas, and that he had been carrying it for about a week. Eadler testified that his reading of *Miranda* warnings, Defendant's waiver, and the subsequent interrogation were videotaped but that the original interaction with Defendant was not recorded because his vehicle (where the camera was located) was not nearby.

The Government introduced a video recording of Defendant in the back of the squad car. The video clearly shows Eadler reading Defendant his *Miranda* warnings and Defendant waiving them.

---

[2]Defendant concedes that he lacks standing to challenge any search of the vehicle as he was only a passenger in it. He therefore does not raise the search of the car as an issue in his suppression motion.

In the video, Defendant states that both the cocaine and weapon were his.

Defendant also testified at the hearing for the limited purpose of the suppression motion. Defendant testified that he was at the Whispering Oaks Apartments in Plano, Texas in June 2014. Defendant testified that he and the female driver "Childress" had been sitting in her car for approximately 10-15 minutes when Officer Eadler approached the car.[3] Defendant testified that he had not been using drugs while in the car and that the K2 packet was already on the ground when he and Childress pulled up in the parking lot after having dropped off his "uncle" at a nearby Motel 6.

According to Defendant, Officer Eadler asked him if he had anything on him that the officer needed to know about, he responded "no sir," and the pat down commenced. Defendant testified that he was not under the influence of any drugs or alcohol and was cooperative with Eadler. Defendant testified that Officer Eadler removed his cell phone from one pocket. When Officer Eadler patted the second pocket containing the cocaine, Defendant testified, Officer Eadler manipulated the sock containing the cocaine. According to Defendant, the cocaine was smaller than a golf ball and kept inside a plastic bag, which was kept inside a knotted up sock. Defendant denies that the plastic made any crinkling noise when Officer Eadler was patting him down. Defendant also testified that the

---

[3]Defendant's testimony about how long he had been at the apartment complex prior to going to sit in the car with Childress was inconsistent and unclear. He initially testified that officers arrived shortly after he and Childress returned from dropping off his "uncle" at the Motel 6. He later testified that he did not leave between the first and second 911 call and that they spent some time inside the apartment visiting with Childress' mom before going to the car. Because these inconsistencies are not relevant to the Court's analysis as to the constitutionality of the search, it does not address them further. The Court merely notes that the inconsistencies further call into question Defendant's credibility when testifying in this matter.

officer probably felt the knot on the sock and thought that was cocaine.

According to Defendant, Officer Eadler asked him "what's this" when he was manipulating the cocaine and Defendant did not respond. Defendant denied that he was sticking his hands in pockets as alleged by Officer Eadler. Instead, Defendant claimed that he was just pulling his pants up during the pat down because he did not have a belt on.

Defendant testified that he was not immediately placed in a patrol car because Officer Eadler was talking to another officer and that approximately 10-15 minutes passed between the time Officer Eadler removed the cocaine from this pocket and the time Eadler placed Defendant in his patrol car. Defendant testified that he did not understand why his rights were not read to him when the cocaine was found.

As to the statements he made to Officer Eadler which were videotaped from the back of his patrol car, Defendant testified that what he said to officers - as captured by the video camera - was not truthful. According to Defendant, the female driver Childress was not his girlfriend, as he stated on the video recording. Defendant also testified that, although he told officers that the gun was his, that was also untrue. According to Defendant, he did not know who the gun belonged to and believed it might of been his aunt's ex-boyfriend, who he also called his "uncle."

## ANALYSIS

The Court first addresses Defendant's claim that the removal of Defendant from the vehicle and the subsequent pat down was without a warrant in violation of his Fourth Amendment rights and that nothing that the officer recovered was immediately recognizable as contraband. The Fourth Amendment permits officers to stop and question an individual, even without probable cause where

they have "reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981); *Terry v. Ohio*, 392 U.S. 1 (1968). As explained by the Fifth Circuit:

> Under *Terry*, officers may briefly detain an individual on the street for questioning, without probable cause, when they possess reasonable, articulable suspicion of criminal activity. *See generally United States v. Michelletti*, 13 F.3d 838, 840 (5th Cir. 1994) (en banc) (discussing and applying *Terry*). In order to ensure their safety during the stop, police may frisk the subject for weapons that they reasonably suspect he may carry. *Michelletti*, 13 F.3d at 840. The purpose of the frisk is to afford an officer "the opportunity to protect himself from attack by a hostile suspect." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed.2d 612 (1972). Accordingly, if the situation warrants it, officers may take further steps in connection with a *Terry* frisk, including handcuffing, as long as they are not "unreasonable in failing to use less intrusive procedures to safely conduct their investigation." *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000).

*U.S. v. Scroggins*, 599 F.3d 433, 440-41 (5th Cir. 2010).

As to reasonable suspicion, the Fifth Circuit has further explained it as follows:

Our assessment of reasonable suspicion is based on the totality of the circumstances. Furthermore, reasonable suspicion can vest through the collective knowledge of the officers involved in the search and seizure operation. The collective knowledge theory for reasonable suspicion applies so long as there is "some degree of communication" between the acting officer and the officer who has knowledge of the necessary facts. Reasonable suspicion can be formed by a confidential informant's tip so long as the information is marked by "indicia of reliability." In *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007), we discussed a number of the factors applied in determining whether a tip provides reasonable suspicion, including: "the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.

*United States v. Powell,* 732 F.3d 361, 369-70 (5th Cir. 2013).

Having considered the totality of the circumstances here, the Court finds that the officers with the Plano Police Department had a reasonable suspicion of criminal activity. The 911 caller reported her suspicion that drugs were being used in the car because both the driver and passenger remained inside the car bending their heads down and because another individual approached the car and appeared to engage in an exchange of money. The caller provided specific information as to the occupants of the car, a description of the car, and details regarding its whereabouts. Moreover, upon his approach to the car, Eadler saw Defendant stuffing something into the console. His removal of Defendant from the car and subsequent pat down were within the scope of *Terry* to ensure officer safety.

As to Defendant's argument that the object inside his pocket was not "immediately recognizable" as contraband, the Court is not convinced. Officer Eadler testified that he did not manipulate the material in Defendant's pocket and based on his training and experience, he believed it to be cocaine inside a plastic baggie. That the baggie was inside of a sock is not relevant. Even Defendant testified that Officer Eadler probably thought the knot in the sock holding the cocaine was cocaine itself. The search was justified based on the officer's reasonable suspicion that it was cocaine (whether it was the knot or cocaine he felt) and the discovery of the cocaine will not be suppressed.

Next, the Court turns to Defendant's argument that any statements obtained by officers were not made voluntarily in violation of *Miranda*. The Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). In order for the Government to introduce a defendant's

statements, it generally must prove that the accused voluntarily, knowingly, and intelligently waived his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. at 436.

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 1689–90, 64 L. Ed.2d 297 (1980). As such, when the subject of the questioning transformed from routine questioning to questions calculated and intended to elicit a criminally incriminating response, an interrogation is considered to have commenced for purposes of *Miranda*. *Innis,* 446 U.S. at 291; *see also U.S. v. Chavira*, 614 F.3d 127, 133, n8 (5th Cir. 2010).

Here, the video offered into evidence clearly captures Eadler reading Defendant his rights and Defendant knowingly waiving them. Even if there was a delay in taking Defendant to the patrol car, as Defendant alleges, the interrogation did not commence until he was placed in Eadler's car and advised of his rights. Defendant appears cooperative and comfortable in his statements, and the Court finds that Defendant was fully aware that he was waiving his rights and the consequences of doing so.

That Defendant now claims that some of the statements he made to officers were not true does not mean that they were involuntarily given. "It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily." *U.S. v. Mendenhall*, 446 U.S. 544, 555-56, 100 S. Ct. 1870, 1878 (1980). There is nothing in the record before the Court that

9

would indicate that Defendant's statements were not voluntarily given.

As clearly indicated by the videotape recording of the exchange, the Court finds that Defendant made a knowing and voluntary waiver of his *Miranda* rights and was not coerced or threatened by law enforcement officers to do so.

For these reasons, the Court recommends that Defendant's Motion to Suppress Evidence and Statement (Dkt. 20) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 16th day of May, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE